**Dana L. Sullivan,** OSB No. 944834
E-mail: dana@baaslaw.com
**Dezi Robb,** OSB No. 151777
E-mail: dezi@baaslaw.com
BUCHANAN, ANGELI, ALTSCHUL
& SULLIVAN LLP
921 SW Washington St., Ste. 516
Portland, OR 97205
Telephone:  503.974.5015
Facsimile:  971.230.0337

*Of Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **LINDA HEDLUND,** | Civil No. |
| Plaintiff**,** | |
| **v.** | **COMPLAINT** |
| **BANKS FIRE DISTRICT #13; and FIRE CHIEF RODNEY LINZ, in his individual and representative capacity,** | **(Retaliation for Reporting Matters of Public Concern in Violation of 42 U.S.C. § 1983; Restraint of and Retaliation for Whistleblowing in Violation of ORS 659A.203)** |
| Defendants**.** | **DEMAND FOR A JURY TRIAL** |

## INTRODUCTION

1.      This is an action for declaratory, injunctive, and monetary relief, including punitive damages and attorneys' fees and costs, to redress unlawful employment practices to which defendants subjected plaintiff, in violation of plaintiff's statutory and common law rights.

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, federal question jurisdiction.

3.      This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state claims arise from the same nucleus of operative facts as the federal claims. The state claims are so related to the federal claims that they form part of the same case or controversy and would ordinarily be expected to be tried in one judicial proceeding.

4.      Venue is appropriate in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

5.      Because a substantial part of the events or omissions giving rise to plaintiff's claims occurred within Washington County, under LR 3-2(b) the Portland Division of the United States District Court for the District of Oregon is the appropriate divisional venue.

## PARTIES

6.      Plaintiff Linda Hedlund ("plaintiff" or "Ms. Hedlund") is currently a resident of Washington County, Oregon.

7.      Defendant Banks Fire District #13 ("defendant District" or "District") is an Oregon special district formed under ORS Chapters 198 and 478 and located in Washington County, Oregon. The District is an employer for purposes of ORS Chapter 659 and a "person" for purposes of under 42 U.S.C § 1983.

8.      At all material times, Defendant Rodney Linz ("defendant Linz" or "Chief Linz") was the Fire Chief for the District. Chief Linz is named in his individual capacity

for purposes of Ms. Hedlund's claims for damages and representative capacity for her claims for injunctive relief and is a "person" for purposes of 42 U.S.C. § 1983.

## GENERAL ALLEGATIONS

9.      On or about July 15, 1995, the District hired Ms. Hedlund as an executive assistant.

10.     In or about March 2015, the District hired Rodney Linz to serve as the District Fire Chief.

11.     According to District policy, the Fire Chief reports directly to a five-member Board of Directors ("Board"). The Chief, however, is responsible for the operations of the District.

12.     The Board meets monthly to discuss all business pertinent to the establishment, equipment and maintenance of the District and its properties.

13.     During her 24 years with the District, Ms. Hedlund became a fixture in the Banks' community and formed numerous close relationships with District staff, board members, and Banks's citizens.

14.     Throughout the majority of those 24 years of employment, Ms. Hedlund was an exemplary employee. In fact, prior to the District hiring Chief Linz, the District had never issued Ms. Hedlund a negative review.

15.     When Chief Linz conducted Ms. Hedlund's performance reviews for the 2016 and 2017 years, the Chief consistently rated Ms. Hedlund's performance as exceeds expectations and/or outstanding.

16.     As the District's executive assistant, Ms. Hedlund's duties included assisting in creating the employee handbook and policies, acting as a liaison with District vendors and the District auditor, taking all Board meeting minutes, preparing all materials for Board meetings, including the District's annual budget for the Board and assisting District employees as needed.

Ms. Hedlund also acted as the District's Human Resources ("HR") department until 2016 when the District hired a second administrative assistant to handle that role. During her time in the HR role, Ms. Hedlund handled all general HR matters, including payroll, accounts payable and receivable and was the custodian for all public records.

17.     In her position, Ms. Hedlund used her in-depth knowledge of the applicable District policies, procedures and guidelines to help onboard new District employees, including two fire chiefs, by familiarizing them with this information and being available to answer any policy, procedure or guideline questions they might have.

18.     From the time the Chief started his employment with the District in March 2015 through October 2018, Ms. Hedlund and Chief Linz had a good working relationship. During this time, the Chief often relied on Ms. Hedlund for guidance in personnel matters because of her intimate knowledge of District policies and procedures and background in human resources.

19.     In or about June 2016, in direct contravention to the District's anti-nepotism policy, Chief Linz appointed his daughter, Samantha Linz, as a volunteer firefighter under his direct supervision. Throughout Ms. Linz's tenure as a volunteer firefighter, Chief Linz also signed off on certain credentials for Ms. Linz, including but not limited to her wildland certification, even though he was aware that his actions violated District policy.

20.     In the summer of 2018, Ms. Hedlund, among other District employees, noticed Chief Linz begin to increase his daughter's firefighting responsibilities and duties, ignoring certain District rules and regulations to his advantage. Chief Linz increased his daughter's duties despite Ms. Linz's lack of qualifications to perform these new jobs. District staff, including Ms. Hedlund, were concerned because they knew that Ms. Linz did not have a driver's license, one of the main requirements for a volunteer firefighter as firefighters are expected to drive while on duty. Ms. Linz also lacked several, valid certifications necessary to qualify as a volunteer firefighter.

21.     At all material times, the District employed Chris Lanter as its training officer. In this role, Mr. Lanter was responsible for training District firefighters and volunteer firefighters and ensuring they completed all training programs before he signed off on their required training certificates.

22.     As training officer and executive assistant, respectively, Mr. Lanter and Ms. Hedlund were in frequent communication. They also enjoyed a close professional relationship with Mr. Lanter frequently relying on Ms. Hedlund for policy advice about personnel issues that arose while he was training District firefighters.

23.     In the fall of 2018, Mr. Lanter had multiple conversations with Ms. Hedlund during which he discussed several instances that made him doubt the Chief's ability to manage the District, especially when it came to Chief Linz's daughter. Mr. Lanter told Ms. Hedlund that he had signed off on Ms. Linz's emergency medical responder ("EMR") certification in her task book even though she had not passed the test. Mr. Lanter explained that the reason he had signed off on her EMR certification was because the Chief had approached him and strongly asked Mr. Lanter to do so. Mr. Lanter clarified that he felt the Chief had heavily implied he could not say no and so, feeling pressured, he signed off on Ms. Linz's task book. In the same vein, Mr. Lanter told Ms. Hedlund that the Chief had signed off on Ms. Linz's Wildland Certification despite knowing that Mr. Lanter was the appropriate person, per District policy, to sign off on firefighter credentials. Lastly, after discussing Ms. Linz's lack of required credentials, Mr. Lanter told Ms. Hedlund that the Chief had listed Ms. Linz as active for the conflagration list. This troubled Mr. Lanter because Chief Linz had included his daughter on the list of firefighters who could be called upon to fight fires despite his knowledge that she did not possess the necessary qualifications and valid certifications.

24.     Ms. Hedlund was alarmed by the notion that Ms. Linz could be called upon to fight

fires without possessing all necessary qualifications. In light of her knowledge that Ms. Linz lacked a driver's license and the information shared with her by the District's training officer, Mr. Lanter, Ms. Hedlund had serious concerns that by allowing his daughter to be listed as active for the conflagration team, the Chief had created a risk to public safety. Moreover, knowing the Chief had manipulated Ms. Linz's task book made Ms. Hedlund question the veracity of all of Ms. Linz's claimed certifications.

25.     Due, in part, to her loyalty to the District, Ms. Hedlund felt compelled to informally discuss these issues with the Chief. Thus, in October 2018, Ms. Hedlund had a casual conversation with Chief Linz regarding his daughter's lack of credentials and the issues Mr. Lanter had recently brought to Ms. Hedlund's attention. In response, the Chief flipped Ms. Hedlund his daughter's task book and caustically told her to give it to Mr. Lanter.

26.     In this same conversation, Ms. Hedlund also spoke to the Chief about her concerns that he had allowed his daughter to be listed as active on the conflagration list while knowing that she was unqualified to be in the field fighting fires. Rather than address Ms. Hedlund's concerns, the Chief side-stepped the issue and explained he was not concerned by his daughter's lack of driver's license as long as other members of the team who were licensed could drive for Ms. Linz, if necessary. The Chief's response did not allay Ms. Hedlund's concerns because if the conflagration team ran into an emergency and Ms. Linz was required to drive, she would not only be breaking the law but would be putting others, including her team, in potential danger.

27.     In or about November 2018, Paradise, California experienced one of the worst fire emergencies in its history. To help assist, the District deployed its conflagration team. This deployment included Mr. Lanter, Ms. Linz, and two other District firefighters. Notably, at the time of deployment, Ms. Linz still did not possess a valid driver's license.

28.     During the conflagration team's deployment to California, Mr. Lanter and the rest

of the team observed Ms. Linz continually make mistakes and generally demonstrate an inability to successfully perform her firefighting duties. The team felt Ms. Linz was not only putting their safety at risk, but also the safety of the people of Paradise. As the training officer on the mission, Mr. Lanter had to continually instruct Ms. Linz on how to perform her job and correct her numerous mistakes.

29.    At this same time, Mr. Lanter was in communication with Ms. Hedlund. Mr. Lanter relayed to Ms. Hedlund the frustrations the conflagration team was experiencing with Ms. Linz due to her incompetence as a volunteer firefighter. He told Ms. Hedlund that the team and he felt Ms. Linz was a hindrance to their ability to complete their duties and they were worried that Ms. Linz posed a possible threat to their safety because of her inexperience and lack of knowledge regarding fighting fires. Mr. Lanter also shared with Ms. Hedlund his concerns regarding Ms. Linz and public safety, telling Ms. Hedlund that he feared Ms. Linz's lack of qualifications and skills posed a risk to the welfare of the Paradise community, especially because of the inherent danger in fighting fires.

30.    On or about November 19, 2018, immediately after Mr. Lanter and the rest of the conflagration team returned from California, Chief Linz held a meeting with Mr. Lanter and Ms. Hedlund. In this meeting, Chief Linz berated the pair and accused them of insubordination, disregarding the chain of command, and undermining his authority. Chief Linz also alleged that they were trying to stir the pot with other staff because of the Chief's decision to deploy his daughter on the conflagration team. Chief Linz did not allow either Ms. Hedlund or Mr. Lanter to respond to his accusations, instead requiring them to remain silent throughout the meeting. Upon the meeting's conclusion, Chief Linz sent both Mr. Lanter and Ms. Hedlund home for the day to contemplate their insubordinate behavior.

31.    Following this meeting, it became clear to Ms. Hedlund that Chief Linz intended to

punish her for expressing her concerns about Ms. Linz's lack of critical qualifications, the clear favoritism Chief Linz afforded his daughter, and the potential risk to public safety posed by allowing Ms. Linz to be included on the list of firefighters available for active duty.

32.    Shortly after the November 2018 meeting, Ms. Hedlund submitted a letter to the Chief responding to his accusations of insubordination. She explained that she did not feel she was being insubordinate because she felt obliged to bring these concerns regarding Ms. Linz to the Chief's attention. In her letter, Ms. Hedlund also outlined the policies and regulations she believed Chief Linz had disregarded, including signing off on the task book of a relative, appointing individuals as volunteer firefighters who lacked essential skills and qualifications, and allowing unskilled volunteers to participate in active fire missions.

33.    Between November 2018 and March 2019, Chief Linz began to heavily scrutinize Ms. Hedlund's conduct despite Ms. Hedlund's performance remaining unchanged. Additionally, Chief Linz started subjecting Ms. Hedlund to constant criticism and would verbally reprimand Ms. Hedlund based upon minor infractions or unfounded accusations that he would not have treated as disciplinary matters before November 2018.

34.    On or about March 6, 2019, Chief Linz issued Ms. Hedlund a letter of reprimand. In the letter, the Chief chastised Ms. Hedlund for not following the chain of command, not supporting his decisions with the volunteers and asserted that Ms. Hedlund's attitude had "increased in negativity." The Chief also accused Ms. Hedlund of going to board members to share complaints which he characterized as "complaints about his leadership and decisions." Chief Linz warned Ms. Hedlund that he would not tolerate this type of insubordination and that if she had any District issues, even issues concerning him, she was required to bring those issues directly to his attention.

35.    The March 6 letter of reprimand left Ms. Hedlund with no meaningful avenue to

report concerns that she had regarding the Chief and interfered with her ability to raise matters of public concern.

36.     On or about March 10, 2019, Ms. Hedlund provided Chief Linz with a written response to the March 6 reprimand. She apologized for not initially bringing her concerns about District personnel directly to Chief Linz. She also clarified that she had not told anyone that she planned to report her concerns to the Board. Rather, she had generally stated in the office to other District employees, if questioned by the Board, she would truthfully answer the Board's questions. Ms. Hedlund also asked Chief Linz why she was the only person he had reprimanded for voicing concerns regarding the Chief's management of the District when numerous District employees had also voiced similar concerns without consequence.

37.     Chief Linz failed to respond to Ms. Hedlund's March 10, 2019 rebuttal letter.

38.     On or about April 17, 2019, Chief Linz issued Ms. Hedlund a performance review for March 31, 2017 through the current date. Chief Linz rated Ms. Hedlund as either "exceeds expectations" or "outstanding" in all but one category, notwithstanding the March 6 letter of reprimand. Chief Linz, however, declined to issue Ms. Hedlund a raise with her positive review. Because of her position as the District executive assistant, Ms. Hedlund was aware that the Chief and the District had given most, if not all, other paid District employees a raise with their annual review despite most of them also experiencing employment issues throughout the prior year.

39.     Due to the mounting concerns Ms. Hedlund and other District employees had regarding Chief Linz's ability to safely manage the District, Ms. Hedlund, along with Mr. Lanter and two other District employees, Captain David Senz and Rob Davis, met with board member Kevin Henning on or about April 23, 2019 to discuss these ongoing concerns. The group explained that they, along with other District employees, were alarmed by Chief Linz's mismanagement of the District. They told Mr. Henning they believed the Chief was opening the District up to potential

liability due to his extreme disregard for the District's policies. Ms. Hedlund also detailed how Chief Linz had appointed his daughter to be a volunteer firefighter despite her failure to meet basic qualifications such as possess a driver's license, thus creating a potential safety risk for the Banks' community. As an example of the Chief's mismanagement and abuse of authority, Ms. Hedlund explained how the Chief had pressured Mr. Lanter to sign off on Ms. Linz's EMR certification although she had failed to pass the training. Ms. Hedlund further detailed how her trust in the Chief had eroded because even after she brought some of these issues to the Chief's attention, he continued to ignore the District's policies. The Chief's demonstrated favoritism towards his daughter and blatant disregard for the volunteer firefighter qualifications and regulations exemplified Chief Linz's abuse of authority, mismanagement of the District and willingness to put the safety of the citizens of Banks, Oregon at risk.

40.     Upon the conclusion of the meeting, Mr. Henning assured the group that the Board would begin an inquiry into their concerns concerning Chief Linz.

41.     Approximately one month later, having received no further communications from Mr. Henning, the same group requested to meet with Mr. Henning again. The group also requested that Mark Schmidlin, another board member, join this meeting because of his longevity and dedication with the District and Board. Mr. Lanter shared with the board members a memorandum documenting various violations by Chief Linz which included examples of abuse of authority and mismanagement committed by the Chief. Many issues described in the memorandum were similar to those that the group had reported to Mr. Henning on April 23. Ms. Hedlund echoed Mr. Lanter's concerns during the meeting and then reported on other situations she had witnessed in which Ms. Linz's lack of training had risked the public's safety while also opening the District to potential liability.

42.     In this same May meeting, Ms. Hedlund told the board members that she had

significant concerns that if Chief Linz found out that she had spoken with them, he would retaliate against her and ensure her termination. Ms. Hedlund explained that since November 2018, when she initially raised these concerns directly with the Chief, he had started targeting her with increasingly harsher discipline and write-ups. She worried, if the Chief were aware that she had shared her concerns with board members, Chief Linz's pattern of retaliation would continue to escalate, leading to the termination of her employment. Mr. Schmidlin assured Ms. Hedlund he would not let that happen.

43.    At the conclusion of the late May meeting, Mr. Henning and Mr. Schmidlin again agreed to investigate the concerns reported by Ms. Hedlund and her coworkers.

44.    Given the small number of District employees and the nature of the issues investigated, Chief Linz determined that Ms. Hedlund, Mr. Lanter, Mr. Davis, and Mr. Senz had been the District employees who had reported him to the Board.

45.    On or about June 10, 2019, the District and Chief Linz terminated Mr. Davis.

46.    On or about June 18, 2019, less than three weeks after the start of the Board's investigation into Chief Linz, Chief Linz issued Ms. Hedlund another letter of reprimand.

47.    The June 18 reprimand letter alleged that, by discussing her concerns about Chief Linz's performance with members of the Board, Ms. Hedlund had again failed to follow the chain of command. Additionally, Chief Linz asserted that Ms. Hedlund's interactions with the Board Chair during a June 12, 2019 open session had been disrespectful. This discipline surprised Ms. Hedlund. The interaction in question was insignificant and would not have been a cause for discipline from the Chief prior to November 2018. Even so, Ms. Hedlund and the Board Chair had interacted since the June 12 Board meeting and Ms. Hedlund perceived them to be on amicable terms.

48.    On or about July 7, 2019, Ms. Hedlund submitted a rebuttal to the June 18 letter of

reprimand sharing her perspective of her interaction with the Board Chair. Ms. Hedlund reiterated to Chief Linz that the interaction was minor and that even Mr. Henning, who had witnessed the incident, did not view the action as a disagreement or confrontation.

49.     In or about mid-July, 2019, volunteer firefighter John Wren informed Mr. Lanter and Ms. Hedlund that during a conversation he had had with the Chief, Chief Linz told him, "We have four people that went to the Board, got rid of one and will be getting rid of the other three soon." Mr. Wren understood the Chief to be referring to Mr. Lanter and Ms. Hedlund and believed they should know what the Chief had said about them.

50.     On or about July 31, 2019, Chief Linz requested a meeting with Ms. Hedlund and presented her with a revised version of her 2019 annual review. The Chief had significantly downgraded Ms. Hedlund's previous April review, marking many categories as "needs improvement" and also rating her overall performance as "needs improvement." Chief Linz claimed that he had downgraded Ms. Hedlund's previous review because he perceived Ms. Hedlund's performance to remain unimproved. Specifically, the Chief explained the downgrade was a result of Ms. Hedlund's decision to go outside the chain of command and express concerns about his performance to board members. Next, Chief Linz threatened Ms. Hedlund's employment, warning her that while she was at work, all outside complaints, meetings, verbal questions of his leadership and encouragement of discord among District members must stop. Again, the Chief failed to offer Ms. Hedlund any alternative avenue of complaint outside her chain of command if her concerns related to actions of the Chief.

51.     Chief Linz understood or should have understood that his July 31 threats to terminate Ms. Hedlund's employment regarding her decision to go outside the chain of command and express concerns to the Board posed a substantial restriction to Ms. Hedlund's ability to report on matters she believed were of public concern.

52.     Ms. Hedlund was stunned by the Chief's negative revisions to her review. Especially worrisome to Ms. Hedlund was the Chief's threat that she would be terminated if she complained further about his conduct. Ms. Hedlund responded to the July 31 meeting with a statement, requesting Chief Linz to provide her with a detailed, written justification for downgrading her April 2019 performance review.

53.     Chief Linz failed to provide any written justification to Ms. Hedlund regarding his downgrade of her April 2019 performance review.

54.     Instead, on or about August 20, 2019, Chief Linz sent Ms. Hedlund a notice of potential termination. The focus of the letter was on Ms. Hedlund's inability to follow the chain of command and insubordination.

55.     On or about September 3, 2019, Chief Linz held a pre-disciplinary meeting with Ms. Hedlund. In the meeting, Ms. Hedlund again tried to explain to the Chief that she had felt he had been targeting her with excessive discipline since November 2018 when she had initially brought her concerns to him regarding his daughter. Instead of addressing Ms. Hedlund's issues, Chief Linz brushed Ms. Hedlund off, once again asserting that the issues she had raised were trivial and not a matter of public concern.

56.     On or about September 10, 2019, Chief Linz and the District terminated Ms. Hedlund. The reasons cited for Ms. Hedlund's termination were her failure to follow the chain of command and her undermining of Chief Linz's authority. Chief Linz also informed Ms. Hedlund that he believed that her performance had been substandard within the last six months, but he failed to mention any performance issues that predated her November 2018 complaints.

57.     Since May 2019, the District has terminated and/or forced the resignation of three out of the four District employees who brought their concerns to the Board, including Ms. Hedlund,

Mr. Davis, and Mr. Senz.

58.    On or about November 18, 2019, David Senz resigned from the District just prior to when Chief Linz's proposed termination of Senz became effective.

59.    Mr. Lanter is still employed with the District. On information and belief, Mr. Lanter is the only training officer the District employs, and the District would have extreme difficulty finding a replacement for Mr. Lanter if Mr. Lanter were terminated.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C § 1983 – Retaliation for Reporting Matters of Public Concern
### Against Defendant Banks Fire District #13

60.    Ms. Hedlund incorporates by references the allegations set forth in paragraphs 1 through 60.

61.    Ms. Hedlund engaged in constitutionally-protected speech when she made numerous reports disclosing matters she believed in good faith were of public concern regarding Chief Linz's abuse of authority and mismanagement including but not limited to: 1) signing off on the task book of a relative; 2) appointing individuals as volunteer firefighters who lacked essential skills and qualifications; 3) allowing unskilled volunteers to participate in active fire missions; and 4) putting the public's safety at risk by allowing unqualified and unskilled volunteer firefighters to interact with the public while performing firefighting duties and/or fighting fire fires.

62.    Ms. Hedlund's reports revealed serious misconduct on behalf of Chief Linz that could and did undermine the ability of the District to perform its mission and serve its citizens and constituted matters of public concern.

63.    The District engaged in a pattern of conduct that was intended to discourage, restrain, dissuade, coerce and otherwise force Ms. Hedlund to stop making her lawfully protected disclosures in a variety of ways, including but not limited to:

    a.   holding unwarranted disciplinary meetings with Ms. Hedlund for failing to follow the chain of command and insubordination;

    b.   issuing Ms. Hedlund baseless reprimand letters and discipline;

    c.   downgrading Ms. Hedlund's 2019 performance review;

    d.   threatening Ms. Hedlund's employment if she continued to report on matters of public concern to the Board,

    e.   proposing Ms. Hedlund's termination for failing to follow the chain of command and insubordination; and

    f.   terminating Ms. Hedlund's employment with the District.

64.    Ms. Hedlund's constitutionally-protected speech was a substantial or motivating factor in the District's decision to terminate Ms. Hedlund's employment.

65.    At all material times, Chief Linz was acting in his representative capacity, and under the color of state law, and these actions constituted state action under 42 U.S.C. § 1983.

66.    The actions of Chief Linz represented the official policies, practices, and customs of the District.

67.    In the alternative, the District, through the Board, approved, acquiesced and/or ratified the actions of Chief Linz and approved the unconstitutional basis for the actions in violation of Ms. Hedlund's constitutional rights under 42 U.S.C. § 1983.

68.    The actions taken by the District were with deliberate indifference to Ms. Hedlund's right to engage in free speech under the First Amendment.

69.    Ms. Hedlund is entitled to a declaration that the District retaliated against her in violation of her constitutional right to engage in free speech under the First Amendment.

70.    As a direct and proximate result of the District's actions as alleged herein, Ms. Hedlund is entitled to injunctive relieve, including reinstatement.

71.     As a direct and proximate result of the District's actions as alleged herein, Ms. Hedlund has suffered economic losses including, past and future lost wages, lost benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be proven at trial, but not less than $300,000.

72.     As a direct and proximate result of the District's conduct, Ms. Hedlund has suffered emotional distress, embarrassment, anxiety, humiliation and damage to her professional reputation, for which she seeks noneconomic damages in an amount to be proven at trial, but not less than $500,000.

73.     Ms. Hedlund hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C § 1983 – Retaliation for Reporting Matters of Public Concern
### Against Defendant Chief Rodney Linz in his Personal Capacity

74.     Ms. Hedlund incorporates by reference the allegations set forth in paragraphs 1 through 60.

75.     Ms. Hedlund engaged in constitutionally-protected speech when she made numerous reports to defendants disclosing matters she believed in good faith were of public concern regarding Chief Linz's abuse of authority and mismanagement including but not limited to: 1) signing off on the task book of a relative; 2) appointing individuals as volunteer firefighters who lacked essential skills and qualifications; 3) allowing unskilled volunteers to participate in active fire missions; and 4) putting the public's safety at risk by allowing unqualified and unskilled volunteer firefighters to interact with the public while performing firefighting duties and/or fighting fire fires.

76.    Ms. Hedlund's reports revealed serious misconduct on behalf of Chief Linz that could and did undermine the ability of the District to perform its mission and serve its citizens and constituted matters of public concern.

77.    Chief Linz, acting under the color of law, engaged in a pattern of conduct that was intended to discourage, restrain, dissuade, coerce and otherwise force Ms. Hedlund to stop making her lawfully protected disclosures in a variety of ways, including but not limited to:

      a.    holding unwarranted disciplinary meetings with Ms. Hedlund for failing to follow the chain of command and insubordination;

      b.    issuing Ms. Hedlund baseless reprimand letters and discipline;

      c.    downgrading Ms. Hedlund's 2019 performance review;

      d.    threatening Ms. Hedlund's employment if she continued to report on matters of public concern to the Board;

      e.    proposing Ms. Hedlund's termination for failing to follow the chain of command and insubordination; and

      f.    terminating Ms. Hedlund's employment with the District.

78.    Chief Linz, acting in his personal capacity, and based on the authority he possessed due to his position with the District as Fire Chief, used the color of law to intentionally deprive Ms. Hedlund of her rights.

79.    Chief Linz's adverse actions were taken with deliberate indifference to Ms. Hedlund's right to engage in free speech under the First Amendment.

80.    As a direct and proximate result of the District's actions as alleged herein, Ms. Hedlund has suffered economic losses including, past and future lost wages, lost benefits and out-of-pocket expense, plus prejudgment interest, in an amount to be proven at trial, but not less than $300,000.

81.     As a direct and proximate result of the District's conduct, Ms. Hedlund has suffered emotional distress, embarrassment, anxiety, humiliation and damage to her professional reputation, for which she seeks noneconomic damages in an amount to be proven at trial, but not less than $500,000.

82.     Chief Linz's actions as alleged herein were malicious, intentional, willful and with reckless disregard to Ms. Hedlund's statutory rights.  Such conduct exceeds the bounds of social toleration and therefore Ms. Hedlund seeks to recover punitive damages for these actions in the amount of $500,000.

83.     Ms. Hedlund hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to 42 U.S.C. § 1988.

**THIRD CLAIM FOR RELIEF**
**ORS 659A.203 – Restraint of and Retaliation for Whistleblowing**
**Against Defendant Banks Fire District #13**

84.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 60.

85.     Ms. Hedlund disclosed to defendants information that she reasonably and in good faith believed was evidence of Chief Linz's abuse of authority, mismanagement of the District and threats to public health and safety including but not limited to: 1) signing off on the task book of a relative; 2) appointing individuals as volunteer firefighters who lacked essential skills and qualifications; 3) allowing unskilled volunteers to participate in active fire missions; and 4) putting the public's safety at risk by allowing unqualified and unskilled volunteer firefighters to interact with the public while performing firefighting duties and/or fighting fire fires.

86.     Ms. Hedlund's reports revealed serious misconduct by Chief Linz that could and did undermine the ability of the District to perform its mission and serve its citizens and constituted

matters of public concern.

87.    Due to Ms. Hedlund's lawful disclosures and reports to Chief Linz and the Board, the District took retaliatory disciplinary actions against Ms. Hedlund and otherwise sought to discourage, restrain, dissuade and prevent her from making further complaints, including but not limited to:

a.    holding unwarranted disciplinary meetings with Ms. Hedlund for failing to follow the chain of command and insubordination;

b.    issuing Ms. Hedlund baseless reprimand letters and discipline;

c.    downgrading Ms. Hedlund's 2019 performance review;

d.    threatening Ms. Hedlund's employment if she continued to report on matters of public concern to the Board;

e.    proposing Ms. Hedlund's termination for failing to follow the chain of command and insubordination; and

f.    terminating Ms. Hedlund's employment with the District.

88.    The District's actions as alleged in paragraph 87 were intentional and constitute a violation of ORS 659A.203(b) and (d).

89.    The District also intentionally violated ORS 659.203(c) by requiring plaintiff to give notice to Chief Linz before reporting her concerns about Chief Linz's abuse of authority, mismanagement and endangerment of public health and safety to the Board or other authorities.

90.    Ms. Hedlund filed a tort claim notice within 180 days of her termination in accordance with ORS 30.275.

91.    Ms. Hedlund is entitled to a declaration that the District violated her statutory right to be free from restraint of or unlawful retaliation for her whistleblowing activity.

92.    As a direct and proximate result of the District's actions as alleged herein,

Ms. Hedlund is entitled to injunctive relieve, including reinstatement.

93.     As a direct and proximate result of the District's actions as alleged herein, Ms. Hedlund has suffered economic losses including, past and future lost wages, lost benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be proven at trial, but not less than $300,000.

94.     As a direct and proximate result of the defendants' conduct, Ms. Hedlund has suffered emotional distress, embarrassment, anxiety, humiliation and damage to her professional reputation, for which she seeks noneconomic damages in an amount to be proven at trial, but estimated to be $500,000.

95.     Ms. Hedlund hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to ORS 659A.885 and ORS 20.107.

WHEREFORE, plaintiff prays for judgment against defendant as follows:

1.     On plaintiff's First Claim for Relief:

   a.   A declaration that defendant District retaliated against Ms. Hedlund in violation of her constitutional right to engage in free speech under the First Amendment;

   b.   An award of economic damages in an amount to be determined at trial, but at least $300,000;

   c.   An award of noneconomic damages in the amount of $500,000;

   d.   All appropriate injunctive relief, including but not limited to reinstatement; and

   e.   Plaintiff's attorney fees, expert fees and costs incurred herein.

2.   On plaintiff's Second Claim for Relief:

   a.   A declaration that defendant Chief Linz retaliated against Ms. Hedlund in violation of her constitutional right to engage in free speech under the First

Amendment;

    b.  An award of economic damages in an amount to be determined at trial, but at least $300,000;

    c.  An award of noneconomic damages in the amount of $500,000;

    d.  Plaintiff's attorney fees, expert fees and costs incurred herein; and

    e.  An award of punitive damages in an amount to be determined at trial.

3.  On plaintiff's Third Claim for Relief:

    a.  A declaration that the District violated Ms. Hedlund's statutory right to be free from restraint of or unlawful retaliation for her whistleblowing activity;

    b.  An award of economic damages in an amount to be determined at trial, but at least $300,000;

    c.  An award of noneconomic damages in the amount of $500,000;

    d.  All appropriate injunctive relief, including but not limited to reinstatement; and

    e.  Plaintiff's attorney fees, expert fees and costs incurred herein.

4.    Any further or alternative relief in favor of plaintiff that the Court deems appropriate.

5.    Plaintiff demands a jury trial.

DATED this 3rd day of September, 2020    BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP

*s/ Dana L. Sullivan*
Dana L. Sullivan, OSB No. 944834
E-mail: dana@baaslaw.com
Dezi Robb, OSB No. 151777
E-mail: dezi@baaslaw.com
Telephone: (503) 974-5015

*Of Attorneys for plaintiff*

Page 1 - **COMPLAINT**